UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Miguel Casiano,

                          Petitioner,

      - against -

United States

                         Respondent.

CV-07-4968
(CPS)(KAM)

MEMORANDUM
OPINION AND
ORDER

-----------------------------------------X

Sifton, Senior Judge.

On September 22, 2003, Petitioner Miguel Casiano was
convicted by a jury of conspiracy to distribute and possess with
intent to distribute cocaine base, heroin and cocaine, in
violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). On
March 9, 2004, Petitioner was sentenced to 144 months of
incarceration. He was re-sentenced following appeal to the same
term on November 30, 2005. Now before this Court is Petitioner's
motion for a sentence of time served or, alternatively, to set
aside the jury verdict pursuant to 28 U.S.C. § 2255.[1] For the
reasons set forth below, Petitioner's application is denied.

## Background

The following facts are drawn from the parties' submissions
in connection with this motion. Disputes are noted.

In June 2002 the Federal Bureau of Investigation began

---

[1] Petitioner's initial application sought only a correction of his
sentence to time served but his reply submission in support of his petition
makes clear that he seeks to set aside the jury verdict.

investigating a narcotics trafficking organization, headed by Jose Diaz, also known as "Joe Monte," that distributed large quantities of heroin, cocaine, cocaine base, and ecstacy during the period from January 2000 to November 12, 2002. September 2003 Trial Transcript (hereinafter "Tr. ___") 47. The heroin was sold by Diaz's organization to other drug dealers, typically in bulk or pre-packaged form, bearing Diaz's brand name, "Scorpion." During the course of the investigation, confidential informants purchased "Scorpion" brand heroin from Diaz and other individuals. Many of the covert purchases were made at Diaz's garage, located at 1208 Decatur Street in Brooklyn.

In September 2002, agents obtained court authorization to intercept communications made on Diaz's cellular telephone. Agents monitored and intercepted calls over Diaz's telephone during the period from September 26, 2002 through November 7, 2002. At the conclusion this period, agents obtained arrest warrants for Diaz, Petitioner, and 19 other individuals, as well as search warrants for locations in Brooklyn and the Bronx used by the Diaz organization to store, package and distribute narcotics.

On November 13, 2002, Petitioner and 19 other individuals were arrested and charged with conspiring to distribute heroin, cocaine, cocaine base, and MDMA. Edwin Perez, who was tried with Petitioner, was among those arrested. With the exception of a

lone fugitive, all of Casiano and Perez's co-defendants pled guilty prior to September 2003. After a nine-day trial in September 2003, a jury convicted Casiano and Perez of the narcotics distribution conspiracy charge, the sole charge against them.

Petitioner was sentenced on March 9, 2004. Although his Sentencing Guidelines range called for a sentence between 188 and 235 months of imprisonment, I granted Petitioner a downward departure on grounds of an extraordinary medical condition and imposed a sentence of 144 months. On appeal, the Second Circuit affirmed the Petitioner's conviction, but remanded the case for re-sentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). On November 30, 2005, I rejected Petitioner's request for a further downward departure and re-sentenced the defendant to 144 months imprisonment.

Petitioner again appealed. The Second Circuit granted the government's motion for summary affirmance on June 25, 2008.

## Discussion

Petitioner's motion includes seven claims.[2] Petitioner

---

[2] In his original filing, Petitioner made some, but not all of the claims set forth below. He argued the remaining grounds in his reply brief in support of his habeas application. I nevertheless consider all his claims on the merits. Where, as here, a petition is filed pro se, the court must give the petitioner "every reasonable opportunity to demonstrate a valid complaint," *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984), and must construe the pro se petitioner's motion "liberally." *United States v. Detrich*, 940 F.2d 37, 38 (2d Cir. 1991); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

alleges that: 1) the jury's verdict convicting him of conspiracy to distribute narcotics was constitutionally invalid, 2) his trial should have been severed from his co-defendant, 3) he was denied effective assistance of counsel, 4) his right to confrontation was denied, 5) his actions were consistent with innocence, 6) his sentence of 144 months imprisonment constitutes "cruel and unusual punishment," and 7) he is eligible for a sentence reduction based on the amended Sentencing Guidelines.

I.  <u>The Jury Verdict Was Not Constitutionally Invalid</u>

Petitioner was convicted of conspiracy to distribute and possess with intent to distribute cocaine base in the amount of 50 grams or more, heroin in the amount of 1 kg or more, and cocaine in the amount of 5kg or more.  He contends that the jury verdict was defective because the evidence at trial did not establish the quantity of drugs alleged or the elements of conspiracy.[3]

A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial "bears a heavy burden." *United States v. Iodice*, 525 F.3d 179, 182 (2d Cir. 2008) (internal citation omitted).  The Second Circuit has stated that the evidence should be considered "in the light most favorable to the government, crediting every inference the jury might have

---

[3] At sentencing, under the guidelines, Petitioner was held accountable for only heroin and cocaine.  Accordingly, I do not address the evidence concerning the quantity of cocaine base.

drawn in favor of the government." *Id.* at 66 (citing *United States v. Naiman*, 211 F.3d 40, 46 (2d Cir. 2000)); *see also United States v. Jones*, 482 F.3d 60, 68 (2d Cir. 2006). The court must determine "whether, after viewing the evidence in the light most favorable to the [government], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lorenzo*, --- F.3d ---, 2008 WL 2780992, at *5 (2d Cir. Jul. 18, 2008) (internal quotations omitted); *see also United States v. Florez*, 447 F.3d 145, 154 (2d Cir. 2006). Direct evidence is not required; "[i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt." *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004) (citation omitted).

> a. <u>Drug Quantity</u>

A conviction of conspiracy to distribute a specified quantity of drugs is invalid unless the drug quantity has been proven or admitted. *United States v. Gonzalez*, 420 F.3d 111 (2d Cir. 2005). Where the jury finds "the specified drug quantity element," the conviction is valid. *Id.* at 125. As evidenced by the special verdict form in this case, the jury concluded that the conspiracy Petitioner joined distributed 50 grams or more of cocaine base, 1 kg or more of heroin, and 5 kg or more of

cocaine.

At trial, the government introduced as evidence
approximately 3,000 glassine bags of heroin[4] and approximately 80
grams of crack cocaine[5] obtained through controlled purchases
made between June 26, 2002 and October 24, 2002. Diaz testified
that when he first went to Petitioner's house in March 2000 to
buy 14 grams of heroin from Petitioner, he saw "about 500 grams"
of heroin in Petitioner's basement. Tr. 230, 1082. Diaz also
testified that Petitioner continued to supply Diaz with 20 to 50
grams of heroin every other week until his arrest in November
2002. Tr. 236. He further testified that between 1995 and 2002,
his organization distributed between 10 and 20 kilograms of
heroin. Tr. 497. Cooperating witness David Lopez, a member of
the Diaz organization, testified that he accompanied Diaz to pick
up as much as 56 grams of heroin from Petitioner's home
approximately once a week during 2001 and 2002. Tr. 959.
Anthony Nunez, another member of the Diaz organization, testified
that he picked up heroin from Petitioner's home numerous times in
the summer of 2002 to give to Diaz. Tr. 717-718. On each visit,
Petitioner supplied Nunez with heroin in amounts ranging from 15
grams to 50 grams. Tr. 718-722.

Nunez also testified that in July 2002, Petitioner told

---

[4] 3000 glassine bags equaled approximately 14 grams. Tr. 234.

[5] As noted, Petitioner was only held accountable at sentencing for
heroin and cocaine.

Nunez that "he could get cocaine," and that during the period
from July 2002 through September 2002, Petitioner supplied the
Diaz organization with cocaine approximately 20 times.  Tr. 746-
47.  According to Nunez, Petitioner sold in total approximately
500 grams of cocaine to the Diaz organization.  Tr. 747-48.  Diaz
also testified that the organization sold approximately 30 to 50
kilograms of cocaine from 1999 through 2002.  Tr. 489-90.

Petitioner argues that "all of the testimony by the
government informants Mr. Diaz, Mr. Nunez et. al. should have
been stricken from the record,"  Def. Br., dated November 21,
2007, at 3.  Petitioner's rationale for striking this testimony
is unclear, but he appears to premise this request on the grounds
that the testimony was not credible and that he was denied his
right to confrontation, an issue discussed below.  *See* Def. Br.,
dated July 21, 2007, at 8. In a jury trial, however, the court
must "defer to the jury's resolution of the witnesses'
credibility." *United States v. Autuori*, 212 F.3d 105, 118 (2d
Cir. 2000) (citing *United States v. Payton*, 159 F.3d 49, 56 (2d
Cir. 1998); *see also United States v. Rea*, 958 F.2d 1206, 1221-
1222 (2d Cir. 1992).  Although Petitioner cites lengthy portions
of testimony from the trial transcript that he argues
demonstrates faulty recollection or lies by Diaz, Nunez, and
Lopez, it is evident from Petitioner's conviction that the jury
believed the witnesses were credible and the testimony cannot be

stricken simply on Petitioner's assertion that the testimony was not accurate.

Petitioner further argues that the fact that no drugs were seized from his home supports his claim that the jury verdict was defective. However, contrary to Petitioner's claim, *see* Def. Br., dated July 7, 2008, at 1, there is no evidence that federal agents ever searched Petitioner's residences at 184 Weirfield Street or 131 Weirfield Street. *See* Gov't Opp. at 6. In any event, even if Petitioner's residences were searched, the absence of drugs at those locations would not demonstrate that the jury's verdict was defective, given the other evidence that the government presented.

Accordingly, taking the evidence in the light most favorable to the government, a rational trier of fact could have found the drug quantities alleged beyond a reasonable doubt.

### b. Elements of Conspiracy

"To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *Lorenzo*, --- F.3d ---, 2008 WL 2780992, at *5 (quoting *Rodriguez*, 392 F.3d at 545); *United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir. 1996). Accordingly, I instructed the jury that the prosecution must establish three essential

facts in order to satisfy its burden of proof with respect to the crime of conspiracy to distribute and to possess with intent to distribute narcotic drugs as charged in the indictment: 1) "that two or more persons entered into the unlawful conspiracy," 2) that the defendant "knowingly and intentionally became a member of that conspiracy by agreement on his part," and 3) "that the objective of the conspiracy be either to commit the crime of distribution or the crime of possession with intent to distribute one or more of the following substances: cocaine base, heroin or cocaine.[6]" Tr. 1197-1198. The jury instructions also required the jury to find the drug quantities above. Tr. 1196.

Besides presenting evidence on the specific drug quantities, the government put forth evidence demonstrating that there was a conspiratorial agreement, that Petitioner became a member of the conspiracy by agreement on his part, and that the conspiracy had the unlawful objective alleged. Transcripts of conversations intercepted during a wiretap on Diaz's cellular telephone reveal discussions about narcotics transactions between Diaz and Petitioner. *See*, *e.g.,* Tr. 319-320 (Petitioner agreed

---

[6] Since the jury instructions required the jury to find that the Petitioner distributed or possessed with intent to distribute one or more of cocaine base, heroin, or cocaine, the fact that Petitioner was held accountable at sentencing only for heroin and cocaine is consistent with the charge.

to supply Diaz with 40 grams or more of heroin).[7] That Petitioner did not mention the words "heroin" or "cocaine" in the telephone conversations is not determinative, as Diaz testified that he and his associates frequently used code words, such as "woman or DVD or movies or pants," to describe drugs in their telephone conversations. Tr. 322;[8] see also United States v. Nersesian, 824 F.2d 1294, 1307 (2d Cir. 1987).

Nunez corroborated Diaz's testimony regarding Petitioner's periodic supply of heroin to the Diaz organization. Tr. 718-720, 723. Nunez testified that he picked up heroin from Petitioner's house "five to seven times" to give to Diaz. Tr. 716-717. Similarly, Lopez testified how he accompanied Diaz to pick up heroin from Petitioner's house. Tr. 958. In addition, Diaz testified that Petitioner willingly rented him one of his residences, 131 Weirfield, and allowed Diaz to use the basement to bag up heroin. Tr. 247. Diaz also testified that Petitioner allowed him to take the heroin on consignment and pay for it at a later date. Tr. 293. For the reasons set forth above, in Section I.a, and below, in Section IV, I decline to strike this testimony.

---

[7] Because the wiretaps were not the sole evidence against Petitioner, his argument that the wiretaps were insufficient to support his conviction, Def. Br., dated July 21, 2007, 15-17, is irrelevant.

[8] Petitioner's argument that the jury could not have inferred that the taped conversations between Petitioner and Diaz concerned drugs without supplemental evidence submitted by the government is without merit; the jury is entitled to consider all admissible evidence.

Petitioner cites portions of Diaz's testimony during cross-examination where Diaz responded that he "didn't get into no agreements. [He] just sold drugs." Tr. 653.  Petitioner asserts that these statements demonstrate that there was no agreement between him and Diaz and thus no conspiracy.  Diaz's complete answer to this question, however, was "[n]o.  I didn't sign no agreements.  We didn't get into no agreements.  I just sold drugs." *Id*.  Diaz clearly was discussing entering into a formal agreement.  A conspiratorial agreement need not be "formal or express." *United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002).  Indeed, since a "conspiracy by its very nature is a secretive operation, the elements of a conspiracy may be established through circumstantial evidence." *United States v. Chang An-Lo*, 851 F.2d 547, 554 (2d Cir. 1988) (internal citations omitted).

The above testimony by the cooperating witnesses, Diaz, Nunez, and Lopez, as well as recorded phone conversations between Petitioner and Diaz, establish that Petitioner played an active role in the scheme to distribute drugs.  There was ample evidence of Petitioner's purposeful activity in furtherance of the conspiracy and of the conspiracy to support the jury's verdict.[9]

---

[9] Petitioner alleges that a juror dozed off during trial, Tr. 74. Assuming such an event occurred, there is no showing that such available remedies as the jurors' collective recollection, the availability of read backs, and counsels' summations were insufficient to correct the lapse in attention.

II. <u>Petitioner's Trial Should Not Have Been Severed from Co-Defendant</u>

Petitioner's claim that he should have been given a separate trial is without merit as co-defendant Perez's defense did not prejudice Petitioner. *See* Fed. R. Crim. P. 14; *Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"). Petitioner argues that Perez was a "high ranking" member of the Diaz organization and that most of the wiretap recordings were of Perez, rather than Petitioner. Def. Br., dated July 7, 2008, at 18. However, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citing *United States v. Carson*, 702 F.2d 351, 366-67 (2d Cir. 1983)).

Further, the defenses presented by Petitioner and co-defendant were largely the same. Both Petitioner's counsel and co-defendant's counsel focused their arguments on the credibility

of the government's cooperating witnesses.[10]  Petitioner's
counsel stated in his summation that David Lopez lies "when it is
something important to him," that Anthony Nunez has "lied in the
past" and is "unable to comply with simple rules of society," and
that Diaz, is "a career criminal" who "is trying to set people
up."  Tr. 1104-1105, 1124, 1126, 1128.  Similarly, co-defendant's
counsel stated that "the crux of the case is the credibility of
Mr. Diaz" and that "[h]e lies when it suits him."  Tr. 1134-1135.

      I also addressed any potential prejudice[11] by instructing
the jury as follows: "Your verdict must be based solely on the
evidence about each defendant.  A case against a defendant stands
or falls on the proof or lack of proof of guilt of that defendant
alone."  Tr. 1193.  *See*, *United States v. Miller*, 116 F.3d 641,
679 (2d Cir. 1997).

      III. <u>Petitioner Was Not Denied Effective Assistance of
Counsel</u>

      To prevail on a claim of ineffective assistance of counsel,
Petitioner must demonstrate both that his counsel's performance
(1) "fell below an objective standard of reasonableness", and (2)

---

      [10] At one point during defense summations, co-defendant's counsel said
"all the things [Petitioner's counsel] said about Mr. Diaz's credibility I
adopt."  Tr. 1134.

      [11] Petitioner points to testimony from Special Agent Thomas MacDonald,
where Agent MacDonald apparently mistakenly referred to Perez rather than
Petitioner.  *See* Tr. 458.  Assuming this is not a transcription error, this
one citation, to a single response given by MacDonald, does not establish
prejudice.  Moreover, it is clear from the context of MacDonald's response and
related testimony that MacDonald was referring to Petitioner.  *See id.*

"that the deficient performance prejudiced the defense."
*Strickland v. Washington,* 466 U.S. 668, 687-88, (1984); *see also*
*United States v. Campbell*, 300 F.3d 202, 214 (2d Cir. 2002).

In evaluating counsel's performance, "a court must indulge a
strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance." *Id*. at 689.
Moreover, acts or omissions of counsel that "might be considered
sound trial strategy" do not constitute ineffective assistance.
*Id*. "Paramount to any [such] review . . . is 'whether counsel's
conduct so undermined the proper functioning of the adversarial
process that the trial cannot be relied on as having produced a
just result.'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d
Cir. 2004) (quoting *Strickland*, 466 U.S. at 686).

Petitioner alleges that his counsel provided ineffective
assistance of counsel by failing to "dissect each element of the
conspiracy" and "dispute the existence of an agreement to
distribute drugs along with the actual quantity of drugs." Def.
Br., dated November 21, 2007, at 4. However, decisions such as
when to object and on what grounds are primarily matters of
"trial strategy and tactics," *United States v. Cohen*, 427 F.3d
164, 170 (2d Cir. 2005) (internal quotation marks omitted), and
thus are "virtually unchallengeable" absent exceptional grounds
for doing so. *Id*.

Moreover, Petitioner's claim that his counsel failed to

dispute the existence of a conspiracy and the actual quantity of
drugs is contradicted by the trial record.  During trial,
Petitioner's counsel stressed that there was never visual
surveillance of Petitioner during the eight months prior to the
arrests.  *See* Tr. 117; 1117-1118.  Government agents followed
suspects depending on "what kind of leads they had or what the
wiretaps showed."  Tr. 1117.  Yet, agents never saw Petitioner
and "never picked him up" during the investigation.  Tr. 1118.
Petitioner's counsel further attacked the credibility of the
cooperating witnesses through vigorous cross-examination.  *See*,
*e.g.*, Tr. 545-548, 654, 657-60, 979.  Throughout his defense,
Petitioner's counsel cross-examined Diaz, Nunez, and Lopez on
their cooperation agreements with the government.  Tr. 524-525,
770-781, 982-984.  He argued that the jury should not find a
conspiracy because the cooperating witnesses could not be
believed and because the wiretaps were inconclusive.  Tr. 1103-
1105, 1112-1113, 1121.  Counsel's strategic decision to pursue
the defense that the jury should not believe the testimony of the
cooperating witnesses, rather than to stress the absence of
evidence on one or more elements of the charge, does not
establish ineffectiveness in light of the evidence that, if
credited, clearly established each of them.  On these facts,
counsel's defense, though unsuccessful, was objectively
reasonable.

However, even if counsel's performance were professionally
deficient, Petitioner cannot meet the second prong of the
*Strickland* test which calls for a demonstration of "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." *Strickland*,
466 U.S. at 694.   The evidence presented against Petitioner was
ample.   The government presented testimony from law enforcement
agents as well as from members of the conspiracy.   Intercepted
telephone conversations between the Petitioner and other members
of the conspiracy were also entered into evidence.   Accordingly,
Petitioner's argument does not give rise to a valid ineffective
assistance claim.

    IV.  <u>Right to Confrontation Was Not Denied</u>

Petitioner alleges that he was denied his right to confront
the witnesses.   However, at trial, Petitioner's counsel cross-
examined the three cooperating witnesses, Diaz, Nunez, and Lopez.
Petitioner's counsel also had the opportunity to cross examine
each of the other witnesses against defendant.   That Petitioner
himself did not ask questions and was told to speak only if the
judge asked him to is irrelevant in light of his counsel's
efforts.   Therefore, Petitioner was "confronted with the
witnesses against him" and his Sixth Amendment right to
confrontation was not violated.   *See* U.S. Const. amend. VI; *see
also Crawford v. Washington*, 541 U.S. 36 (2004).   V.

Petitioner's Actions Do Not Demonstrate Innocence

Petitioner claims that his actions and character were consistent with innocence. He notes that he twice rejected rejected a plea deal, "declined to discuss the offense," and "proclaimed his innocence" following his arrest and throughout trial. Def. Br., dated July 7, 2008, at 19. He also notes that his only prior convictions were for driving under the influence and that he overcame addictions to alcohol and gambling. *Id*.

A habeas court, however, is concerned "'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved."' *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (quoting *Moore v. Dempsey*, 261 U.S. 86, 87-88, 43 S.Ct. 265, 67 L.Ed. 543 (1923)); *see also Edwards v. United States*, No. 05-CV-0017, 2005 WL 1522743, at *3 (E.D.N.Y. Jun. 27, 2005) (A claim of actual innocence based on newly discovered evidence cannot constitute a basis for relief under Section 2255, absent an allegation of some constitutional error). Habeas review does not extend to "freestanding claims of actual innocence." *See Herrera*, 506 U.S. at 405. Rather, "a showing of actual innocence serves merely as a gateway to the airing of [a] petitioner's defaulted claim." *Bravo v. Couture*, 98-CV-8050, 03-MISC-0066, 2003 WL 22284147, at *4 (E.D.N.Y. Aug. 21, 2003) (citing *Herrera*, 506 U.S. at 400).

Moreover, to present a credible claim of actual innocence, a petitioner must present "new reliable evidence" which makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Taylor v. Cuomo*, No. 07-CV-2138, 2007 WL 3540351, at 3 (E.D.N.Y. Nov. 14, 2007). Petitioner's claim of actual innocence in this case is not based on any allegations of new evidence. Petitioner simply contends that his actions in twice rejecting plea deals and choosing to go to trial, combined with assertions about his character, demonstrate that he is actually innocent. These allegations, even if actual innocence were a proper basis for habeas relief, are insufficient to support Petitioner's conclusion.

VI. <u>Remedy for Eighth Amendment Violation Is Not Release</u>

Petitioner argues that his sentence of 144 months imprisonment constitutes "cruel and unusual punishment." Petitioner claims that he is not receiving "the surgical procedures required to maintain his health" and thus has "received a death sentence." Def. Br., dated July 7, 2008, at 20. According to Petitioner, he needs treatment for a myocardial infarction, inguinal hernia, and loss of vision in one eye. *Id*. Petitioner also notes that he suffers from asthma and a severe heart condition with a history of multiple heart attacks and an irregular heartbeat. *Id*. He alleges that he has submitted

multiple requests for treatment that have been ignored.[12]

The Second Circuit has held that "[l]engthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003). Moreover, the Court considered Petitioner's medical condition when sentencing the Petitioner. Although the guidelines called for a sentence of fifteen years or greater, the Court departed from these guidelines and sentenced Petitioner to 144 months because of his age and medical condition. Furthermore, the Court recommended that Petitioner continue to receive the daily medical attention in prison that he was previously receiving and that he be lodged in an institution in the northeast region so that he could receive the comforts of visits from his family. Judgment in a Criminal Case, dated Dec. 14, 2005.

Even if Petitioner can prove that his medical condition is of such gravity that it can be considered a serious medical condition and that prison officials have, in allegedly ignoring

---

[12] Petitioner is housed at Federal Medical Center (FMC) Devens, an administrative facility housing male offenders requiring specialized or long-term medical or mental health care in Massachusetts. Tr. of Status Conference, March 29, 2007, at 3; see also http://www.bop.gov, inmate locator (last visited July 31, 2008).

his requests for treatment, acted with deliberate indifference,[13]

the proper remedy is not a modification of Petitioner's sentence

or release, but damages or an injunction. *Ruiz v. United States*,

No. 99-CV-9868, 2000 WL 1029186, at *3 (S.D.N.Y. 2000) ("The

remedy for an alleged Eighth Amendment violation is either

damages or an injunction, not a reduction in one's sentence")

(citing *Caldwell v. United States*, 992 F. Supp. 363, 366

(S.D.N.Y. 1998) ("even if a prisoner can prove a violation of his

eighth amendment rights, the remedy is damages or to enjoin the

specific practices deemed cruel and unusual--not to be sent

home")); *see also Fisher v. Koehler*, 692 F. Supp. 1519, 1565

(S.D.N.Y. 1988) ("Having concluded that Plaintiffs have

established Eighth Amendment violations, it remains to be

determined whether an injunction should be entered, and, if so,

the scope of that remedy"); *Fernandez v. United States*, 941 F.2d

1488, 1494 (11th Cir. 1991) ("Release from confinement is not a

possible remedy" for prison conditions that violate the Eighth

Amendment). For this reason, Petitioner's application on this

---

[13] On March 21, 2007, the Court received a letter from Petitioner's daughter, stating that Petitioner was having problems with his heart condition but was "being forced to get up at 4:00a.m. to go to work." Letter from Rosa Casiano, dated March 21, 2007. At a status conference that was called to address the issue on March 29, 2007, the government stated that officials at FMC Devens were not aware of Petitioner's complaints. Petitioner and Petitioner's daughter were to be instructed that they should first contact the Bureau of Prisons. Transcript of Status Conference, March 29, 2007. There is no indication that the BOP was contacted or what the results of such efforts were, if any.

ground is denied.[14]

### VII. Petitioner is Not Eligible For a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)

Petitioner argues that because he was charged with conspiracy to distribute and possess with intent to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), he is eligible for a sentence modification based on the United States Sentencing Commission's recent amendments to the Sentencing Guidelines. See U.S.S.G § 2D1.1; U.S.S.G § 1B1.10. It is, however, evident that, for sentencing and Guideline purposes, petitioner was held accountable at sentencing for the heroin and cocaine distributed by the conspiracy only. Based on the plain language of 18 U.S.C. § 3582(c)(2) defendant's argument is without merit, as defendant's sentencing guideline range, 188 to 235 months, has not been reduced by the Sentencing Commission.[15] U.S.S.G § 1B1.10, p.s., (n.1(A)(I)) (reduction in sentence is not consistent with U.S.S.G. 1b1.10, p.s., when "none of the amendments . . . is applicable to the defendant").

**Conclusion**

_____

[14] Petitioner may, of course, file an action seeking the appropriate relief of an injunction requiring treatment and/or damages. I express no opinion on the procedural propriety or merits of such a claim.

[15] Since Petitioner is not eligible for a sentence reduction, it is not necessary at this point to appoint him a lawyer as he requested "to help him at a possible resentencing hearing." Def. Br., dated July 7, 2008, cover page.

For the reasons stated herein, Petitioner's application is denied.  The clerk is directed to transmit a copy of the within to all parties.  Petitioner is denied a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right.  *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir. 1996).

SO ORDERED.

Dated :   Brooklyn, New York
          September 5, 2008

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge